[Civ. No. 4539. First Appellate District, Division One.—June 15, 1923.]

In the Matter of the Estate of JACOB M. SOWASH, Deceased.

[1] WILLS—DEVISE TO WIFE—FAILURE UPON DEATH—DISTRIBUTION TO HEIRS.—Where a testator devised all his property (which had been acquired subsequent to his second marriage) to his second wife, with the request that she make a will devising the property, other than so much thereof as she expended during her lifetime for her comfort, maintenance, and support, one-half thereof to her children, both by him and by her former husband, share and share alike, and the other one-half thereof to his children, both by her and by his former wife, share and share alike, but such second wife predeceased him, the testamentary disposition to her failed and the entire property was properly distributed to his heirs, to wit, his children by her and by his former wife, to the exclusion of her children by her former marriage.

[2] ID.—WIFE AS "RELATION"—CONSTRUCTION OF SECTION 1310, CIVIL CODE.—The wife is not a "relation" of the husband, within the meaning of section 1310 of the Civil Code, which declares that whenever any estate is devised or bequeathed to any child, or other relation of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, such descendants take the estate so given by the will in the same manner as the devisee or legatee would have done had he survived the testator.

[3] ID.—SUBSTITUTION UPON DEATH OF DEVISEE—INTENT OF TESTATOR.—A will whereby the testator devises all his property to his wife with the request "that she make a will before, or, at least, immediately upon my death, devising and bequeathing all the property she shall receive from me or my estate upon the final distribution of my estate by final decree or otherwise . . . other than so much thereof as shall have been expended by her and for her during her lifetime" to certain children, but wherein he makes no provision in the event that his wife predecease him, does not show any intent on the part of the testator to make a substitution to others in that event.

[4] ID.—TRUSTS—PRECATORY WORDS—INTENT.—Precatory words are not to be regarded as creating a trust unless it appear that the testator intended to impose an imperative obligation and to exclude the exercise of discretion on the part of the person to whom the recommendatory words are addressed.

[5] ID.—EXPRESSION OF DESIRE—WHEN LIMITATION UPON ESTATE.—The expression of the desire of the testator for the disposition of his estate is one to be considered as imperative when addressed to his executor, but a mere independent expression of desire addressed to the legatee or devisee is not to be construed as a limitation upon an estate or interest expressly vested in the legatee in absolute terms.

[6] ID.—ABSOLUTE DEVISE—REASONS FOR—LIMITATION BY EXPRESSION OF DESIRE.—The devise to the wife having been in absolute terms, such devise was not limited by the testator's expression of desire that she make certain testamentary disposition of the property, or so much thereof as remained, nor by the reason given by him for the devise to her.

[7] ID. — LAPSE OF DEVISE — DISPOSITION OF COMMUNITY PROPERTY. — The property having been community in its character and the testamentary disposition to the wife having lapsed and failed by reason of the fact that she predeceased her husband, the estate vested in him without administration, and upon his death his heirs were entitled to have distribution made to them in conformity with subsection 1 of section 1386 of the Civil Code.

APPEAL from a decree of the Superior Court of Humboldt County distributing an estate. George D. Murray, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. H. G. Weaver and Puter & Quinn for Appellants.

Pierce H. Ryan and A. G. Bradford for Respondents.

TYLER, P. J.—This appeal involves the construction to be given to the will of one Jacob M. Sowash, deceased. The instrument is dated February 8, 1916, and at the time of his death, which occurred December 6, 1919, Sowash was a resident of the county of Humboldt. He was possessed of certain real and personal property. He had been twice married. His second wife, Augusta M. Sowash, predeceased

---

4. Creation of precatory trusts, notes, 106 Am. St. Rep. 499; 2 Ann. Cas. 593; 21 Ann. Cas. 321; Ann. Cas. 1915D, 418.

him, she having died March 26, 1919. Sowash was her second husband. The property here involved constitutes community property acquired by deceased and his wife Augusta. The will mentions three groups of children, namely, the children of deceased by his first wife, the children of Augusta M. Sowash by her former husband, and the children of deceased by his wife Augusta. [1] The proper construction to be given to the second paragraph of the instrument is the subject of this appeal. It reads as follows:

"Second. I give, devise and bequeath all the property, whether in expectancy or possession, whereof I shall die possessed, or to which I may be entitled, to my dear and beloved wife, with this my dying request to her: that she make a will before, or, at least, immediately upon my death, devising and bequeathing all the property she shall receive from me or my estate upon the final settlement of my estate by final decree of distribution or otherwise (not necessarily in kind but in amount or value) other than so much thereof as shall have been expended by her and for her during her life time for her comfort, maintenance and support, to the following persons, to wit: the one half thereof to my wife's children, to wit: Hazel Sowash, Ethel Maud Sowash, Hattie Long, Benjamin Doffner, and Lottie Stebbins, share and share alike; and the other half to be given to my children, to wit: Hazel Sowash, Ethel Maud Riley, George Sowash, Frank Sowash, Ida Devault, Alice May, Jacob Sowash, share and share alike. I make this request because all the property we have has been accumulated by us jointly as husband and wife, and is as much hers as mine; and it is just and right that upon our deaths the one-half of it should go to her children and the other half to my children, and we have mutually agreed that it shall be so divided; and the terms of this will and my request herein expressed have also been mutually agreed upon by myself and wife."

Under the construction adopted by the trial court the entire property of the estate was distributed to the children of the deceased by his first and second marriages to the exclusion of the children of his wife Augusta by her former marriage, the court concluding that as Augusta had predeceased the testator the testamentary disposition as to her

had lapsed, and that, therefore, the entire estate went to the heirs at law of deceased. This is an appeal from the decree and is prosecuted by two of the children of Augusta by her former marriage.

It is their contention that it was the intention of the testator, as clearly expressed by his will, that upon the death of both himself and his wife the estate was to be divided equally between his children and his wife's children in the proportion of one-half to his children by his first and second marriages, the other half to the children of his wife Augusta by her first marriage and to her children by her second marriage with deceased, and that this manifest intention must be carried out, and courts have no power to change it.

It is further contended that the devise in the will to Augusta A. Sowash was impressed with a precatory trust, by reason of which, had she survived the testator, she would have taken all the property devised to her, less that expended in her lifetime for her comfort and support, in trust for the persons to whom the will requests her to devise it, and that the trust was not terminated by her death.

Respondents' answer to the first contention is that the wife, having predeceased the testator, the disposition to her failed, and the entire estate was properly distributed to the heirs of Sowash.

The code sections upon the subject in force at the time of the testator's death provide as follows: If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute some other person in his place, except as limited by section 1310 of the Civil Code. (Sec. 1343, Civ. Code.) Section 1310 declares that whenever any estate is devised or bequeathed to any child, or other relation of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, such descendants take the estate so given by the will in the same manner as the devisee or legatee would have done had he survived the testator.

[2] There is no express intention in the will to substitute others in place of the wife in the event that she predeceased her husband, a subject hereinafter discussed;

and unless it can be said that the wife is a relation of the husband within the meaning of section 1310 of the Civil Code the disposition as to her failed, and the estate was properly distributed to the heirs of the husband, the testator having survived the wife.

Appellants' first contention involves the meaning of the term "relation" as applied to the construction of wills.

The word is a very general and comprehensive term, and may include in its generic sense every relation that arises in social life. (*Esty* v. *Clark*, 101 Mass. 36 [3 Am. Rep. 320].) Lexicographers have defined it as signifying a relation in general so as to include relationship by blood or affinity. In its widest sense, therefore, the word no doubt has this meaning. But in the construction of wills, when courts have been called upon to determine whether a wife is a "relative" under statutes preventing lapse, they have by a uniform course of decisions held that the term includes only relationship by blood, and that a husband, therefore, is not a relative of his wife, nor a wife a relative of her husband. (*Renton's Estate*, 10 Wash. 533 [39 Pac. 145]; *Supreme Council* v. *Bennett*, 47 N. J. Eq. 39 [19 Atl. 785]; *Esty* v. *Clark*, 101 Mass. 36 [3 Am. Rep. 320].) The reason for the rule is stated in *Renton's Estate, supra,* to be that upon a devise to a child or other relative by consanguinity it would be naturally supposed that a testator would intend that his property, upon the death of the devisee before his own, should inure to the benefit of the lineal descendants of his devisee, because such descendants would in fact be his relatives for whose welfare he might be supposed to have a concern, only differing in degree from that which he would feel toward the devisee himself. But in the case of a wife, although a husband might acquire a great affection for her children by a former husband, yet this solicitude would not stop with such children, and the husband's whole estate devised by will to his wife might upon his death descend to utter strangers to him, to the exclusion of those who might be the natural objects of his bounty. (See *Estate of Pfuelb*, 48 Cal. 643.)

The claim that the devise has not lapsed by reason of the saving clause in section 1310 cannot, therefore, in our opinion be maintained as such statute applies against a lapse only where the beneficiary is a relation of the testator,

and relationship by marriage is not contemplated within the meaning of the section.

Nor is this situation altered or in any way affected by section 1334 of the same code. Appellant presents the argument in this connection that the term "relation" as used in section 1310 is broad enough to include the meaning given to it under section 1334, which, he contends, includes any person who would succeed to the estate of a testator had he died intestate.

The latter section does not apply to the situation under consideration, as pointed out by respondent, the section is but a general rule dealing with the subject of the interpretation of wills, providing, as it does, that testamentary dispositions to the class of persons enumerated therein, when the words used are words of donation and not of limitation, vests the property in the heirs at law of a deceased according to the provisions of the code relating to succession. The manifest object of this section is to give a definite meaning to the different words employed in the statute, which have received various constructions in the different jurisdictions when unaided by statute. As suggested by counsel for respondents, if the testator had made a devise to "my relations" instead of to "my wife," then resort might be had to the section to determine the meaning of the term. The use of the term in the will here under construction did not therefore create a substituted devise. (*Farnsworth* v. *Whitney,* 102 Me. 296 [66 Atl. 831]; *Curley* v. *Lynch,* 206 Mass. 289 [92 N. E. 429].)

[3] Nor does the will, as claimed, show any intent on the part of the testator to make a substitution to others in the event that his wife predeceased him. Of course if such an intent appeared it would control, and, if legal, be given full effect. (*Estate of Goetz,* 13 Cal. App. 292 [109 Pac. 492]; *Estate of Murphy,* 157 Cal. 63 [137 Am. St. Rep. 110, 106 Pac. 230]; *Smith* v. *Secor,* 157 N. Y. 402 [52 N. E. 179].) Here there is absolutely nothing in the will that can possibly justify the claim that such intention does appear. The instrument is silent upon the possibility of the wife predeceasing the testator. If he had contemplated a substitutional gift over he should have made such intention clearly appear. (*Estate of Sutro,* 139 Cal. 87 [72 Pac. 827].)

It must, therefore, be held that the will was made in view of existing conditions at the time of its execution. Here Sowash gave his estate to his wife, and the fact that he made no provision in the event that she predeceased him shows that he did not anticipate this contingency. What his intent may or may not have been after this condition was changed by the death of his wife we have no means of knowing, except from the fact that he allowed the will to stand as originally executed. We are limited in our powers to an interpretation of the will as we find it. The rule of construction that the intent of the testator must be carried out if possible does not authorize courts to make a new will to conform to what they may think the testator intended. The intent of the testator must be ascertained from the will as it stands (*Estate of Hittel,* 141 Cal. 436 [75 Pac. 53]).

Upon this question, therefore, we conclude that there was no substitution, and that the wife, having predeceased the husband, and she not being a relation of his within the meaning of section 1310 of the Civil Code, the testamentary disposition as to her lapsed and failed.

Nor do we think that the devise to the wife was in any manner impressed with a precatory trust.

In this connection it is contended by appellants that by reason of the requests contained in the will a trust was created, under which the wife, had she survived the testator, would have taken all of the property devised to her (less what might be expended for her comfort and support during her lifetime) in trust for the persons to whom the will requests her to devise it, and that such trust was not terminated by her death prior to that of the testator.

Respondents advance two arguments against this contention. They claim, first, that the chief essential of a precatory trust does not exist, as the words employed in the will are recommendatory in nature and import no trust or charge, and cannot therefore be construed as imperative.

Second, that the subject or *res* of the supposed trust being merely the property devised "other than so much as shall have been expended for herself during her lifetime for her comfort, maintenance and support," is too uncertain and indefinite to be made the basis of an enforceable trust.

[4] Upon the question as to what words are sufficient to create precatory trusts the decisions of our own state are controlling. As is said in the *Estate of Browne,* 175 Cal. 361 [165 Pac. 960], whatever may be the rule elsewhere, it is here settled that precatory words are not to be regarded as creating a trust unless it appear that the testator intended to impose an imperative obligation and to exclude the exercise of discretion on the part of the person to whom the recommendatory words are addressed, citing *Estate of Purcell,* 167 Cal. 176 [138 Pac. 704] ; *Estate of Mitchell,* 160 Cal. 618 [117 Pac. 774] ; *Estate of Marti,* 132 Cal. 666 [61 Pac. 964, 64 Pac. 1071] ; *Kauffman* v. *Gries,* 141 Cal. 295 [74 Pac. 846]. In the determination of this question our supreme court in *Estate of Hamilton,* 181 Cal. 758 [186 Pac. 587], has declared that the construction to be placed upon one instrument is of little value as a precedent in aid of the construction of another. And this is particularly true of cases involving the existence or nonexistence of a precatory trust, for previous decisions only serve to illustrate the application of general rules of construction of wills, which, after all, is a matter of impression as to the maker's intention made upon the mind of a court considering the will itself with the circumstances surrounding its execution. Each case must of necessity, therefore, depend more or less upon its own peculiar facts. While in the case last cited the court deemed certain words used in connection with the will under consideration as being sufficient to create a precatory trust, there is nothing contained in the decision which conflicts in any manner with the doctrine expressed in the Marti case, *supra,* which establishes the rules of interpretation to be observed in the construction of language used in this connection, and these rules have not been departed from in subsequent cases. It is there pointed out that precatory words may or may not create a trust according to the circumstances of the particular case. They are not to be regarded as creating a trust unless it appears that the testator intended to impose an imperative obligation, and to exclude the exercise of discretion or option in reference to the act in question. [5] The expression of the desire of the testator for the disposition of his estate is one to be considered as imperative when addressed to

his executor, but a mere independent expression of desire addressed to the legatee or devisee is not to be construed as a limitation upon an estate or interest expressly vested in the legatee in absolute terms. A clear and distinct devise or bequest cannot be affected by any other words not equally clear and distinct or by inference from other parts of the will. Accordingly, the ordinary use of the word "desire" does not import a trust or charge as addressed to a legatee or devisee. An expression of "desire" that the one to whom a present bequest is made shall make a testamentary disposition falls short of a command or direction, and is in the nature of a mere expression of the testator's feeling, and a suggestion or recommendation or reason to be considered by the legatee or devisee in making a testamentary disposition. (See, also, *Estate of Mitchell,* 160 Cal. 618 [117 Pac. 774]; *Estate of Purcell,* 167 Cal. 176 [138 Pac. 704].)

[6] Unless, therefore, the case compels a different construction, a mere recommendation or request is not sufficient to create a precatory trust.

Nor can it be here said that the reason given for the devise to the wife in any manner changes the situation, for, as above stated, a clear and distinct devise is not affected by recommendations or by any other words not equally clear and distinct. (*Estate of Grannis,* 142 Cal. 1 [75 Pac. 324]; Civ. Code, sec. 1322.)

[7] The property being community property in its character and the testamentary disposition to the wife having lapsed and failed by reason of the fact that she predeceased her husband, the estate vested in him without administration, and upon his death his heirs were entitled to have distribution made to them in conformity with subsection 1 of section 1386 of the Civil Code. The trial court rightfully so concluded.

As above suggested, whatever the testator's intention may have been as to the disposition of his estate in the event that his wife predeceased him we have no means of knowing. He had an opportunity of meeting the changed condition by making a new will. This he did not see fit to do, and we cannot make one for him (*Estate of Hill,* 141 Cal. 436 [75 Pac. 53]; *Estate of Fair,* 132 Cal. 523 [84 Am. St. Rep.

70, 60 Pac. 442, 64 Pac. 1000]; *Estate of Walkerley*, 108 Cal. 656 [49 Am. St. Rep. 97, 41 Pac. 772]).

This conclusion renders a discussion of the question of the uncertainty and indefiniteness of the trust unnecessary.

For the reasons given the judgment is affirmed.

St. Sure, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 13, 1923.